SAMUEL TOWNSEND *v.* RICHARD FRANCE.

A promissory note issued with a blank left in it for the name of the payee, may be filled by any *bona fide* holder of it with his own name. and it will then become the promissory note of the maker to him as the payee from its date, and in an action upon it against the maker, he will not be bound to prove the nature of the transaction between the maker and the first holder from whom he received it, or that he received it from the latter according to the purpose for which it was so given to him, or that he had authority from the maker to fill the blank with his own name, or at his will and pleasure to pass it, as he received it, to another with the like power and discretion in regard to it; for this authority the transaction itself imports and the law implies in favor of every *bona fide* holder of it, whenever a promissory note is made and issued in this manner.

ASSUMPSIT on a promissory note for $1,250, dated Nov. 15th, 1860, made by Richard France, the defendant, and payable to the order of Samuel Townsend, the plaintiff, seven months after date with legal interest. The proof was that the note had been drawn in blank as to the payee and was delivered in that form by France, the maker, to Stephen Broadbent, Sr., who gave it in the same form to Townsend, the plaintiff, who was called to the stand and examined as a witness by the counsel for the defendant, and stated that he received it from Broadbent in compensation for services rendered by him to the latter as his agent in traveling to and fro several times between this State and Baltimore and in consulting and employing counsel to obtain an injunction to stop France from drawing his lottery and to compel him to settle with Broadbent, in which he was occupied from first to last between two and three months; and that after the note had thus been delivered to him, he filled the blank with his own name as the payee of it in the month of May 1861, when he put it in bank for collection.

*Wootten, Attorney General,* for the plaintiff: It was well settled that a note drawn as this was, in blank as to the

56

payee, may pass from hand to hand and be filled with the name of any *bona fide* holder of it, as the payee of it; and it is consequently too late now to raise any question on that ground. His side would therefore rest the case of the plaintiff there, until they heard from the other the specific ground on which they intended to resist the right of the plaintiff to recover.

*T. F. Bayard*, for the defendant: The note was in blank as to the payee when it was delivered by Broadbent, who received it in that form from France, to the plaintiff, and the latter filled the blank with his own name as the payee of it. Under what circumstances, or for what reasons, or for what purpose the note was thus drawn and delivered by the defendant to Broadbent, did not appear in the evidence. The plaintiff himself in his testimony stated that he paid the defendant no money for the note, and no consideration passed from him to the defendant for it; on the contrary, it appeared from his evidence that he received it from Broadbent in payment for certain services rendered by him to the latter in some controversy in which he was involved at the time with the defendant, and with a view to stop his proceedings under his lottery grant and to force him to a settlement with Broadbent. It would therefore seem that the services for which the note was given by the latter to the plaintiff were directly against the interests of the defendant. It was also apparent that the note was given by Broadbent to the plaintiff without the knowledge and consent of the defendant. They did not, however, intend to deny that when a promissory note was drawn as this was, in blank as to the payee, the blank might be filled with the name of any *bona fide* holder of it for value, as the payee in it; but when this was done, the authority for it from the maker of the note, must be affirmatively shown by such a payee when he sues upon it; for the authority of the maker for that purpose, will not be implied merely from the possession of it by such a party, and because without such

authority either express or implied, it could not be the promise, or note of the maker to such a payee. But the note being imperfect and incomplete in this respect when it leaves the hands of the maker of it, it cannot be considered in fact or in law his promissory note until the blank is filled and the name of some one as the payee of it, is inserted in it; and when this is afterward done with the authority of the maker expressed or implied, it has then precisely the same force and effect as if the name of such payee had been originally inserted in it by the maker at the time of making it. The privity of contract between them in such case, is then direct and immediate, and it is a good promissory note from its date; and the nature of the consideration, or the want of any consideration as between them to support an action upon it, is open to examination and inquiry as it is between the original parties to any other promissory note full and complete at the time when it leaves its maker's hands. But when, as in a case like this, no consideration is shown to have passed from the payee to the maker of the note, and the legal effect and validity of it being thus far impeached on the part of the defendant, it is incumbent upon the plaintiff to show, in order to establish his right to recover upon it, as the note of the maker to him as the payee of it, not only that he is the *bona fide* holder of it, but that his name was inserted as the payee of it by the authority of the defendant as the maker of it, expressed or implied, according to the original intent or purpose for which it was thus drawn and delivered by him to Broadbent; and which authority as was before remarked, will not be inferred or implied from the mere possession of the note by the payee as a *bona fide* holder of it in such a case. For on this point Justice Story observes, " if a blank paper intended to be a promissory note is signed by the maker, or if a person endorses his name upon it, it may afterward be filled up by any authorized person according to the intent for which it is signed or endorsed, and in the possession of a *bona fide*

holder, it will be held valid." *Story on Prom. Notes, sec.* 37. *Story on Bills of Exchange, sec.* 54. 1 *Saund. Pl. & Ev.* 459. *Crutchley v. Mann,* 1 *Eng. C. L. R.* 179. *Russell v. Langstaff,* 2 *Doug.* 514.

*D. M. Bates,* on the same side : This as had before been remarked, was a case of the first impression, for he had found in the books no case like it, and therefore it must be argued and must depend in the decision of it, on its own facts and circumstances. The declaration which contained but one count, alleged in the usual form that the defendant made this promissory note and delivered it to the plaintiff and thereby promised to pay him the sum of money specified in it according to the tenor and effect thereof. Now, although that was a matter of form, the facts proved must substantially sustain it, or the plaintiff could not recover. But did the evidence in the case in point of fact, or according to any established principle of legal construction or implication, sustain that allegation? In this case so far from there being any proof that the defendant made and delivered the note in question to the plaintiff, there was strong presumptive evidence at least, that it came to the possession of the latter altogether without his knowledge and consent and against his interest, by an abuse of his confidence in this respect on the part of Broadbent to whom it was delivered in blank as to the payee, and contrary to the purpose and design for which it was thus delivered to him; which tainted the transaction with fraud, and under circumstances too, that should have led the defendant to suspect, if he did not know when he received it, that such was the true nature of it. Under such circumstances, would the law imply any right or authority on the part of the defendant to fill the blank with his own name as payee, and thus to complete a note incomplete and imperfect on its face, and which in point of fact contained a promise to pay to no one, and to allege in despite of the facts proved and all the natural presumptions to the contrary, that the de-

fendant made and delivered this note to him and then and there promised to pay to him the sum of money mentioned in it? Where the transaction is perfectly fair in its character, done in the usual course of trade and commerce and without any imputation of fraud or suspicion attaching to it, commercial credit and confidence require and the law implies an authority on the part of any *bona fide* holder for a valuable consideration, of a negotiable promissory note drawn as this was, to fill the blank with his own name and by his own act, and with or without the actual knowledge and consent of the maker to constitute himself the payee of it. But the authorities cited by his colleague showed that even in such cases, the authority could only be implied when the blank was filled in accordance with the design and purpose for which the note was thus drawn and delivered by the maker to the original holder of it; and it was incumbent upon any subsequent holder of it, who has filled the blank with his own name and sues as the payee upon it, to prove that it was done according to the intent, and not in contravention of the object of the maker, or the purposes for which he thus drew the note in blank and delivered it to the first holder. The object and purpose of making a note in this form, may indeed be very general; such as to enable the original receiver of it to raise money upon it on the credit of the maker, by inserting his own or any other name in it at his pleasure, or it may be for a specific object with a like power and authority on his part. But whenever he parts with it still in blank and another, although a *bona fide* holder for value, has received it and supplied the blank with his own name as payee, and this fact appears upon the trial, as no actual consideration is shown in such a case to pass from him as payee to the maker for it, it is incumbent upon him at least, to show, in order to maintain his action upon it, that the insertion of his name in the blank was made in accordance with the intent and object of the maker in thus drawing and delivering it to the party who first received it. In which

respect it resembles a promissory note that has been altered or amended in some material part after it has left the hands of the maker; and in which case it is always incumbent upon the holder of it to show that it was done with the knowledge and consent of the maker, or it will avoid the instrument. It was therefore necessary to authorize and empower the plaintiff in this case to fill the blank with his name as payee and to entitle him to recover upon the note as such in this action, (and he can sue upon it in no other character) for him to prove that it was thus drawn in blank and delivered by the defendant to Broadbent for such purposes or with such an intent as would have authorized him to fill the blank with his own name at pleasure, or to have passed it as he received it to another with authority to do likewise. For the authority to fill the blank of such a promissory note or bill of exchange is never implied by law from the mere possession of it by even a *bona fide* holder of it. And yet, we have in this case a party who has deliberately received a promissory note drawn as this was, incomplete and unfinished on its face in a most material part, and bearing the consequent badge of special trust and confidence between the maker and the person from whom he thus received it, under equivocal and suspicious circumstances certainly, to say the least of them, and who now asserts his right and authority to fill the blank with his own name as payee and to recover upon it in an action against the maker, without deigning to offer the slightest explanation of the purpose or object for which it was given to the person from whom he received it. The cases in England and in this country he would admit, had gone very far, and perhaps too far, in tolerating and sustaining promissory notes and bills of exchange drawn in the incomplete and imperfect form in which this note was made when it left the hands of the defendant, for the convenience of merchants and bankers and the benefit of commerce; but no case could be found in all the books to sanction a recovery under circumstances like the present, or to warrant a

general implication of authority to any and every holder who may happen to become possessed of such a note, to fill the blank with his name and to sue upon it as the payee, without reference to the object with which it was drawn by the maker, and without any proof or explanation whatever, of the purpose for which it was given to the person from whom he received it.

In the next place no consideration for the note, as between the plaintiff and the defendant, the former as the payee and the latter as the maker of it, had been proved in the case, although enough had been shown under the circumstances by way of rebutting his right to recover, to devolve upon the plaintiff the necessity of doing this. It had already been shown and it also appeared from the declaration, that the only relation subsisting between the parties to the action was that of payee on the part of the plaintiff and that of maker of the note on the part of the defendant, and they could not be regarded in any other character; for the note upon its face, was conclusive of this fact, as well as the character in which the plaintiff had brought his suit upon it; and it being an action by the payee against the maker, some consideration must be shown to have proceeded from the plaintiff to the defendant for the note, and such a consideration too, as would furnish a cause of action by the former against the latter independently of the note itself; but no consideration passing from the plaintiff to Broadbent merely for it, would be of such a character, or could afford any ground of action against the defendant. To hold such a consideration to be sufficient to support this action, would place Townsend, the plaintiff, in the position of an endorsee of the note from Broadbent, instead of the payee of the note *ab origine,* which was the only true and legal relation which he could hold in regard to it.

*Gordon,* for the plaintiff: The argument on the other side proceeds upon a misapprehension of the true nature and effect of the negotiability of a promissory note made

as this was, in blank as to the payee, as a good and valid note *ab initio*, that is to say from its date, as soon as the blank is afterward filled with the name of any *bona fide* holder of it to whose hands it may come after the maker has parted with it. Now what was the value and effect of this note from the day it bears date, when it was thus made, signed and delivered by the defendant to Broadbent in blank as to the payee, but complete as a negotiable promissory note in all other respects? Was it by reason of this omission, this blank merely, not accidental but deliberately designed by the maker, so much waste paper of no account or value whatever; or did it not import a substantial and valid business transaction between them, such as is of frequent occurrence among business and commercial men, and did not the law imply from the mere fact of the making and delivery of the note in this form, in the first place a good and sufficient consideration as between the maker and Broadbent to constitute it a valid promissory note of the maker, to be completed at the will and pleasure of the holder, and in the next place an authority on his part to fill the blank with his own name as the payee, or at his option to pass it over in that form to another for any consideration passing between them, with the like privilege to such subsequent holder still further to dispose of it in the same manner and form, or to insert his own name in the blank and make himself the payee of it on its face by intendment of law from its date? That negotiable promissory notes are thus made and put in circulation by their makers and are frequently filled with names of unknown *bona fide* holders of them to whose hands they come in the course of commercial credit and dealing, is admitted on the other side, and their general validity is neither questioned nor denied. No authority therefore is necessary on this point. The distinction in this case, however, was taken that a subsequent *bona fide* holder of a negotiable promissory note thus drawn and deliberately committed to the discretion and disposition of the first holder of it to be used and put in circu-

lation for purposes generally known alone to themselves, as the negotiable promissory note of the maker of it, has no implied authority in law to receive it in payment of a debt due to him from the first holder of it, or for services rendered by him to such holder, and to fill the blank with his own name as the payee of it, and cannot maintain an action upon it as such against the maker,.unless he is prepared to prove at the trial the object or purpose for which it was thus given to the first holder, and that he received it of such holder according to such intent and design, or that the former holder was at least, clothed with such general power over the use and disposition of it, as would entitle him to fill the blank with his own name, or to pass it to any other *bona fide* holder of it for a valuable consideration between themselves, with authority to the latter to supply the blank with his name as the payee. This authority it is contended on the other side, is not implied by law from the mere possession of the note by such a subsequent *bona fide* holder for value, but must be affirmatively and substantively proved on his part in the manner he had stated, to entitle him to recover upon it. But that was the very thing which the law presumed and the very authority which the law implied in such a case; and to dispute it was to deny the negotiability of such a note which was conceded in the argument and in the admission made on the other side, and was utterly inconsistent with the very object which every maker must necessarily have in view whenever he draws a promissory note in such a form and places it in the hands of another to be used and disposed of by him as his negotiable promissory note; and no case to the contrary of this he would venture to assert could be found in any of the books. The cases cited on the other side were none of them cases of this nature, and do not sustain the argument of the counsel for the defendant, or the principle for which they have contended in its application to a bill of exchange or promissory note drawn in blank as to the payee, as this was, and delivered in that

57

form to another for the express purpose of being used and disposed of by the receiver as the negotiable paper of the drawer or maker of it.

*The Court, Gilpin, Ch. J.*, charged the jury, that commercial usage and expediency as well as the established policy of the law, which sanctioned and protected the credit and currency of negotiable paper when so intended to be by the makers and receivers of it, had long since recognized the validity and obligation as such, of promissory notes made and disposed of by the makers of them in the manner and form in which the note in question was drawn and delivered by the defendant to the party from whom the plaintiff received it; and promissory notes made and issued as this was, were of frequent use at the present day in many parts of the country, and with the repeated decisions which had been had recognizing and affirming the use and employment of them, it was now too late to call in question the effect, or validity, or the propriety, or expediency of them. It is therefore well settled in this country that a promissory note made and issued by the maker with the omission of the name of the payee, but with a blank in the body of the note for the future insertion of it, may afterward be filled by any *bona fide* holder of it, with his own name as payee, and it will then be treated and recognized in law, as a good promissory note of the maker to him from its date. In the case now before them, the promissory note in question which was for $1,250 in the usual form in other respects of an ordinary negotiable promissory note, was drawn with a blank for the name of the payee, dated and signed by Richard France, the defendant, and in that form was delivered by him to Stephen Broadbent, Sr., who afterward and before the maturity of the note, delivered it in the same form to Samuel Townsend, the plaintiff, in payment for certain services rendered by him to Broadbent, of the nature and for the purposes stated in his evidence, and who soon afterward filled the blank

with his own name as payee when he put it in bank for collection. Whatever might have been the object or purpose of the defendant in making and delivering the note in this incomplete form to Broadbent, we know and are bound to infer from the commercial usage and practice in such cases, that it must have been the understanding and design of the parties to that transaction, so far at least, as the note itself was concerned, that the latter should have the right and privilege in negotiating, or in using and disposing of the note for that purpose, whatever it may have been, to fill the blank afterward with his own name as payee, or to dispose of and deliver it in the form in which he received it, to some other person with the like authority to him, or any subsequent *bona fide* holder of it, to insert his name in the blank as payee. And so the law will intend and such it will imply was the authority of Broadbent and of any such subsequent holder of it, under the circumstances; and when therefore the note so passed and delivered to the plaintiff and the blank in it was filled by him with his own name as payee, the law presumed that it was done with the sanction and consent of the defendant, and it then became the promissory note of the defendant as the maker, to him as the payee of it from its date, just as if his name had been inserted as payee in the blank by the defendant and maker of it, at the time of dating, drawing and signing it as his promissory note. And being recognized and regarded as such a promissory note between the maker and payee of it, it was a further implication of law that it was founded on a good and valid consideration moving from the latter to the former, and as the consideration might be altogether independent of and outside of the note, it was neither unreasonable in itself nor inconsistent with the principle of the rulings in these cases, to hold that the original consideration which passed from Broadbent to the defendant for it, or the original motive or object in making the note in this form, may constitute a sufficient consideration as between

the parties in this suit, to maintain the action upon it. What that motive or object may have been has not been shown; but the moment it is held, as has been repeatedly and uniformly decided, and is now considered settled, that any *bona fide* holder of a promissory note made and issued as this was, may fill the blank with his own name as payee, and it will then become a good promissory note from the maker to him from its date, it must be conceded as necessarily involved and implied in the principle on which the ruling is founded, that the consideration from the first holder to the maker, or the original motive or object on his part for issuing the note in such a form, is a sufficient consideration, if any is required to be shown, to support an action upon it by such a subsequent *bona fide* holder as payee against the maker of it; and what is meant by a *bona fide* holder in this connection is simply one who has received such a note from or through the first recipient of it in the way of trade or business for a valuable consideration; and what will constitute a sufficient or a valuable consideration in law for a promissory note, may in general be said to consist either in some right, interest, profit or benefit accruing to the party who makes it, or some forbearance, detriment, loss, responsibility, or act, or labor or service on the part of him who takes or receives it; and if either exists, it will constitute a sufficient valuable consideration to sustain a promissory note between any of the parties to an action upon it. Every person is in the sense of the rule treated as a *bona fide* holder for value, not only when he has advanced money or other value for it, but when he has received it in payment of a precedent debt, or for services rendered the party from whom he receives it; and he is ordinarily presumed to be *prima facie* a holder for value, and is not bound to show that he has given any value in fact for it, until the other party has shown the want, or failure, or illegality of the consideration; and a *bona fide* holder for value without notice, is entitled to recover upon any negotiable instrument which he has received before it has

become due, notwithstanding any defect or infirmity in the title of the person from whom he derived it, even though such person may have acquired it by fraud, or even by theft or by robbery. And consequently it follows that if Broadbent had been guilty of any breach of faith or confidence or of any fraud toward the defendant in passing and delivering the note to the plaintiff, contrary to the understanding between them, or the purpose for which it was thus made and delivered to him, it could not affect the validity of it in the hands of the plaintiff as the *bona fide* holder of it for a valuable consideration, without notice or knowledge of such fraud, or breach of faith and confidence on the part of Broadbent in passing and delivering it to him, or prevent his recovery upon it in the present action.

The argument of the counsel for the defendant was therefore unsound, for it was not necessary, in order to entitle the plaintiff to recover in this case, that he should have been prepared to show the nature of the transaction between the defendant and Broadbent and to prove affirmatively as a fact in the case, that the note was drawn in blank as to the payee and was so delivered by the defendant to Broadbent for such a purpose, or with such an understanding between them, as would have authorized the latter to fill the blank with his own name as payee, or at his discretion to deliver it as he received it, to any other person for a valuable consideration with the like authority to fill the blank with his name as payee, and that it was so delivered by him to the plaintiff in accordance with such purpose or understanding, or pursuant to the authority and discretion so conferred upon him by the defendant. For this we consider was unnecessary to be proved or shown affirmatively on the part of the plaintiff to maintain the action, since the transaction itself imports and the law implies as we have before remarked, whenever a promissory note is made and delivered to another as this was by the defendant, that the person to whom it is so delivered, or any subsequent *bona*

*fide* holder of it receiving it in the same form, has authority to fill the blank as was done by the defendant in this case, with his name as payee, and may recover as such against the maker, without any proof whatever as to the purpose or understanding with which it was made and delivered to the original holder of it, or that he received it in conformity with such purpose, or pursuant to any general or special authority vested in such holder by the maker of it. Every person who makes and issues a promissory note in this form must know, or at least, ought to know from the general character, obligation and effect of such paper, and the ready circulation and transmission from hand to hand which it obtains as well as the important and useful purposes which promissory notes now serve, based on the credit and responsibility of the parties to them, in all the transactions of trade and business, that he will be accountable for it in the hands of any *bona fide* holder to whose possession it may come. And if any one is to lose or suffer loss by breach of confidence in a case like this, or by the indiscreet or improvident issue of such paper, reason and justice as well as the policy of the law which sanctions and protects the credit and negotiability of such instruments, certainly require that those who make and issue them should sustain the loss, rather than their usefulness, or the public confidence in their security should be impaired by a contrary decision on the question raised in the present action.

Verdict for the plaintiff.